Our File No.: 37.3337-16

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, a Missouri insurance company. | ) | |
| *Plaintiff,* | ) | |
| -vs- | ) | No. 3:17-cv-00412 |
| ALAN CAMPBELL and JERRY KNOBELOCH, | ) | |
| *Defendants.* | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the plaintiff, Shelter Mutual Insurance Company ("Shelter"), a Missouri insurance company, by its attorney Christopher J. Pickett of Lindsay, Pickett, Rappaport & Postel, LLC, and for its complaint for declaratory judgment against Alan Campbell ("Mr. Campbell") and Jerry Knobeloch ("Mr. Knobeloch"), alleges as follows:

## INTRODUCTION

1. Shelter seeks a declaration that it does not owe a duty to indemnify its insured, Mr. Campbell, under two policies of insurance issued to him, with respect to a personal injury lawsuit, and a corresponding settlement demand, made by Mr. Knobeloch.

## THE PARTIES

2. Shelter is a mutual insurance company organized under the laws of the State of Missouri, with its principal place of business located in Columbia, Missouri, and, accordingly is a citizen of the State of Missouri.

3. At all times relevant hereto, Mr. Campbell was an individual with a place of residence in Marion County, Illinois. At all times relevant, Mr. Campbell intended to remain a resident of the State of Illinois and, accordingly, is a citizen of the State of Illinois.

4. At all times relevant hereto, Mr. Knobeloch was an individual with a place of residence in Marion County, Illinois. At all times relevant, Mr. Knobeloch intended to remain a resident of the State of Illinois and, accordingly, is a citizen of the State of Illinois.

## JURISDICTION & VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the plaintiff and defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## BACKGROUND FACTS

7. On or about May 24, 2016, Mr. Knobeloch was helping Mr. Campbell start the engine of a motor home at 1115 East 2nd Street in Centralia, Illinois.

8. On May 24, 2016, Mr. Campbell owned the motor home.

9. On May 24, 2016, the motor home was registered and licensed with the State of Illinois.

10. Mr. Knobeloch and Mr. Campbell were inside the motor home while attempting to start its engine.

11. Mr. Knobeloch alleges that he was injured during this work.

12. Arising out of this alleged injury, on or about August 3, 2016, Mr. Knobeloch filed a one-count complaint for negligence against Mr. Campbell in the Circuit Court of the Fourth

Judicial Circuit, Marion County, Illinois, case no. 16 L 49 ("the underlying complaint" or "the underlying litigation"). A true and correct copy of the underlying complaint is attached hereto as **Exhibit A**.

13. The underlying complaint alleges, in pertinent part, as follows:

- Mr. Knobeloch was assisting Mr. Campbell in attempting to start the motor of a Winnebago motor home. ¶ 3.
- Mr. Campbell had a container of gasoline and poured gasoline into the carburetor which ignited in an explosion. ¶¶ 4-5.
- Mr. Campbell moved, spraying Mr. Knobeloch with gasoline, which then ignited, causing Mr. Knobeloch to sustain burns. ¶¶ 6-7.

14. Mr. Knobeloch seeks damages in excess of $50,000.00. Exhibit A, ¶¶ 8-9.

## THE SHELTER POLICIES

- **Homeowners Policy**

15. Shelter issued a Homeowners Insurance Policy to Campbell, policy no. 12-71-7463121-1, effective May 10, 2016 through May 10, 2017, with liability limits of $300,000 per occurrence ("the Homeowners Policy"). A true and correct copy of the homeowners' policy is attached hereto as **Exhibit B**.

16. The Homeowners' Policy provides, in part, as follows:

**SECTION II- PERSONAL LIABILITY AND MEDICAL PAYMENT PROTECTION**

**COVERAGE E- PERSONAL LIABILITY**
ADDITIONAL DEFINITION USED IN COVERAGE E
In Coverage E:

> **Damages** means money an **insured** is legally obligated to pay another **person** for **bodily injury**, or **property damage**, caused by an **accident**. ***

INSURING AGREEMENT

Subject to limits of **our** liability for this coverage stated in this section, **we** will pay **damages** on behalf of an **insured**.

* * *

EXCLUSIONS

**We** do not cover:

1. **Damages** arising out of the **ownership**, maintenance, operation, use or entrustment of:
   (a) Aircraft other than miniature aircraft not designed to transport cargo or people.
   (b) **Land motor vehicles**, other than **recreational motor vehicles**:
      (1) **Owned** by any **insured**;
      (2) Operated by any **insured**;
      (3) **Rented** to any **insured**; or
      (4) Loaned to any **insured**.
      **We** do not provide coverage if the **land motor vehicle** is kept in dead storage on the **insured premises** and is not licensed for use on **public roadways**.
   (c) **Motorized vehicles**, if the **bodily injury** or **property damage** occurs away from the **insured premises**. This exclusion does not apply if the **motorized vehicle** is:
      (1) A golf cart used for golfing on golf course;
      (2) A vehicle originally designed to assist the physically handicapped;
      (3) Not a **land motor vehicle** being used in a part-time job related activity by **you** or a **relative** and the **individual** engaged in that activity is a full time student under the age of 25; or
      (4) A lawn mower being used to mow other **premises**, so long as such mowing is not a **business**.

* * *

**DEFINITIONS USED THROUGHOUT THIS POLICY**

* * *

22. **Insured premises** means:

   (a) The **residence premises**;
   (b) Any one or two family **dwelling you** acquire during the term of this policy, if you intend to reside there during the term of this policy;
   (c) The part of any other **premises** where **you dwell** if it is shown in the Declarations;
   (d) The part of any **premises** that are not **owned** by any **insured**, if an **insured** is temporarily using it as a **dwelling**;

(e) The part of any structures or **premises**, not **owned** by any **insured**, which an **insured** occasionally **rents** for non-**business** purposes
(f) Unimproved **premises owned** by, controlled by, or **rented** to, an **insured**, but this does not include **premises**, any part of which are used for **farming** or **custom farming**;
(g) Cemetary plots, or burial vaults, **owned** by an **insured**;
(h) Land on which a single or two family **dwelling** is being built for an **insured**, if the land is **owned** by, or **rented** to, the same **insured**; or
(i) Any structures used by **you** for storage of non-**business** items usually kept on the **residence premises**, and any **premises** to which those structures are attached.

* * *

24. **Land motor vehicle** means:
(a) A **motorized vehicle** originally designed primarily for travel on public roadways;
(b) A **motorized vehicle** that is licensed for **use** on **public roadways**; or
(c) A vehicle attached to, or carried on, another vehicle that meets the definition set out in (a) or (b) above.
(d)

* * *

27. **Motorized vehicle** means any type of vehicle capable of transporting people or property that has ever been powered by a motor, irrespective of the type of energy, or fuel, used by that motor. This definition applies even if a motor is no longer used to power the vehicle. This definition applies to all vehicles whether they are designed to operate on land, water, or in the air.

* * *

29. Own means that the **person** referred to holds the legally recognized title to, or is a **leaseholder** of, an item of real property or **personal property**, irrespective of the fact that there may be other **owners**. This definition is not changed by the patterns of usage of the property.

* * *

37. **Recreational motor vehicle** means a **motorized vehicle** that:
(a) Was not originally designed primarily for travel on **public roadways**; or
(b) Is not currently licensed for use on **public roadways**.
**Recreational motor vehicle** does not mean:
(a) A vehicle used, or designed to be used, in competition with other vehicles;
(b) A vehicle used solely to service the **residence premises**;
(c) A vehicle originally designed to assist the physically handicapped; or
(d) A lawnmower used solve to mow grass.

- **<u>General Liability Policy</u>**

17. Shelter issued a General Liability Insurance Policy, policy no. 12-31-7463121-2 to Campbell, effective from May 10, 2016 through May 10, 2017, with a $500,000 limit per occurrence and a general aggregate limit of $1,000,000 ("the GL policy"). A true and correct copy of the GL policy is attached hereto as **<u>Exhibit C</u>.**

18. The GL policy provides, in part, as follows:

**SECTION I- COVERAGES**
**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" and settle and claim or "suit" that may result. But:

* * *

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Premises:
Project:
(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
2. The project shown in the Schedule.

* * *

**2. Exclusions**
This Exclusion does not apply to:

* * *

**g.** Aircraft, Auto Or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owed or operated by or rented to loaned to any insured.
This exclusion does not apply to:

* * *

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is license or principally garaged; or
(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**SECTION V - DEFINITIONS**

* * *

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

* * *

**12.** "Mobile Equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
**b.** Vehicles maintained for use solely on or next to premises you own or rent;
**c.** Vehicles that travel on crawler reads;
**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:
  (1) Power cranes, shovels, loaders, diggers or drills; or
  (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;
**e.** Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
  (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
  (2) Cherry Pickers and similar devices used to raise or lower workers;
**f.** Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.
However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":
  **(1)** Equipment designed primarily for:
    **(a)** Snow removal;
    **(b)** Road maintenance, but not construction or resurfacing; or
    **(c)** Street clearing;
  **(2)** Cherry pickers and similar devised mounted on automobile or truck chassis and used to raise or lower workers; and
  **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.
However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a comppulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

- **<u>Automobile Policy</u>**

19. Shelter issued an automobile policy, policy no. 12-31-7463121-8 to Campbell, effective June 18, 2015 through June 18, 2016, with limits of $100,000 per person and $300,000

per accident ("the auto policy"). A true and correct copy of the auto policy is attached hereto as **Exhibit D**.

20. Shelter accepted the defense of Campbell under the terms of the auto policy and is currently defending him under that policy in the underlying litigation.

21. On December 12, 2016, counsel for Knobeloch sent Shelter correspondence claiming that, in addition to Campbell's Auto Policy, Campbell's Homeowners Policy and GL Policy covered the underlying litigation.

22. In so claiming, counsel for Knobeloch demanded an amount in excess of the auto policy limits.

**COUNT I**
**No Duty to Defend or Indemnify**
**Under the Homeowners Policy**

23. Shelter restates and incorporates the allegations of paragraphs 1 through 22, above, as if set forth fully herein.

24. The homeowners policy's exclusion (1) for "damages arising out of the ownership, maintenance, operation, use or entrustment" of "land motor vehicles" or "motorized vehicles" applies to negate coverage.

25. As such, Shelter owes no duty to defend or indemnify Campbell in the underlying litigation under the homeowners' policy.

26. There may be other bases on which Shelter can properly deny coverage and Shelter reserves the right to plead them in the future.

Wherefore, the Plaintiff, Shelter Mutual Insurance Company, prays that this Honorable Court enter an order finding and declaring that it does not owe a duty to defend indemnify defendant Alan Campbell, under the Shelter homeowners' policy no. 12-71-7463121-1, with

respect to the underlying complaint filed by Jerry Knobeloch, in the Circuit Court of Marion County, case no. 16 L 49, and for such other and further relief as this Court deems fair and just under the circumstances.

**COUNT II**
**No Duty to Defend or Indemnify**
**Under the General Liability Policy**

27. Shelter restates and incorporates the allegations of paragraphs 1 through 25 above as though set forth fully herein.

28. The designated premises endorsement in the GL policy limits coverage to injuries that arise out of the ownership, maintenance or use of the premises.

29. As Knobeloch's alleged injuries did not arise out of the ownership, maintenance or use of the premises, the GL policy does not cover the loss.

30. In addition, the GL policy's exclusion (2) for injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . any insured" applies to negate any coverage that might otherwise exist.

31. For the foregoing reasons, Shelter owes no duty to defend or indemnify Campbell in the underlying litigation under the GL policy.

32. There may be other bases upon with Shelter may properly deny coverage, and Shelter reserves the right to plead them in the future.

Wherefore, the Plaintiff, Shelter Mutual Insurance Company, prays that this Honorable Court enter an order finding and declaring that it does not owe a duty to defend or indemnify defendant Alan Campbell, under the Shelter general liability policy no. 12-31-7463121-2, with respect to the underlying complaint filed by Jerry Knobeloch, in the Circuit Court of Marion

County, case no. 16 L 49, and for such other and further relief as this Court deems fair and just under the circumstances.

Respectfully submitted,
LINDSAY, PICKETT, RAPPAPORT & POSTEL, LLC

By: /s/ Christopher J. Pickett
Attorney for Plaintiff,
Shelter Mutual Insurance Company

Christopher J. Pickett
Email: cpickett@lprp-law.com
Direct Phone: 312.596.7779
**LINDSAY, PICKETT RAPPAPORT & POSTEL, LLC**
10 S. LaSalle St., Suite 1301
Chicago, Illinois 60603
Fax: (312) 629-1404